# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

KEVIN A. LYNCH, dob: 8/7/1979,

CRIMINAL COMPLAINT

CASE NUMBER: 08-46m (AEG)

I, Jill Ceren, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning sometime in 2006, and continuing through until the present time, in the State and Eastern District of Wisconsin, the above-named individual did knowingly and intentionally conspire to possess with the intent to distribute and distribute in excess of 500 grams of cocaine powder and 5 grams of cocaine base in the form of crack cocaine, both Schedule II controlled substances, in violation of Title 21, United States Code, §§ 846, 841(a)(1), and 841(b)(1)(B).

I further state that I am a Task Force Officer assigned to the Drug Enforcement Administration, and that this complaint is based on the facts contained in the attached affidavit.

Continued on the attached sheet and made a part hereof: ✔ Yes

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

April 21, 2008        at   Milwaukee, Wisconsin
Date                        City and State

Aaron E. Goodstein., U.S. Magistrate Judge        _____
Name & Title of Judicial Officer                  Signature of Judicial Officer

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jill Ceren, being first duly sworn on oath, state that:

## I. PURPOSE AND BACKGROUND

1. I am a special agent for the United States Department of Justice Drug Enforcement Administration, working in the Milwaukee, Wisconsin District Office. I have been employed as a DEA agent for over 16 years. In the course of my work, I investigate violations of federal drug trafficking laws. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

2. The information contained in this affidavit is based upon my personal observations and investigation, information relayed to me by other law enforcement agents and officers, and through official law enforcement reports. To the extent that the information is not based upon my personal knowledge, I believe it to be truthful and reliable. It is also based upon information gained from interviews with a cooperating informant, whose reliability is established separately herein.

3. During the course of my employment, I have participated in at least 100 investigations involving the distribution of controlled substances, During my tenure with DEA, I have authored over 50 affidavits supporting wire and electronic intercepts, criminal complaints, search and seizure warrants. I have debriefed more than 100 defendants, informants, and witnesses who have personal knowledge regarding major narcotics trafficking organizations and activities.

4. This affidavit is based on my personal investigation and knowledge as well as information reported to me by other federal, state, and local law enforcement officers (case agents) during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon information gained from interviews with cooperating defendants, whose reliability is established separately herein.

## II. SUBJECT FOR WHOM CRIMINAL COMPLAINT IS SOUGHT

5. I make this affidavit in support of a criminal complaint charging Kevin Anthony Lynch (dob 08-07-1979) with violation of Title 21 USC 841(a)(1), (b)(1)(B), and 846, conspiracy to distribute cocaine and crack cocaine.

6. As detailed below, there is probable cause to believe that Kevin Lynch conspired with others to distribute in excess of 500 grams of cocaine and 5 grams or more of cocaine base in the form of crack cocaine.

## III. PROBABLE CAUSE

7. In February 2007, Joseph Stinson was arrested in Racine, WI in possession of three kilograms of cocaine. Stinson subsequently cooperated with law enforcement. Stinson has been charged with violating federal drug trafficking laws in the Eastern District of Wisconsin. Stinson, in the course of interviews, revealed that he supplied cocaine, both in powder and crack forms, to many other individuals in Racine. Many of these individuals have since been charged with violating federal drug trafficking laws, and have also cooperated with law enforcement about their cocaine trafficking activities with Stinson and with other individuals as well.

8. Stinson implicated a co-defendant (CW-1) in brokering or middling cocaine transactions between Stinson and KEVIN LYNCH in 2006. Specifically, Stinson stated CW-1 middled, two ½ kilogram quantities of powder cocaine to LYNCH, as well as three or four nine-ounce (1/4 kilogram) quantities as well during 2006. Stinson, in turn, told me that he middled three or four 1/8 kilogram quantities between Stinson and LYNCH and a third co-defendant Carl Munger in 2005 and 2006. CW-1 stated s/he brokered two additional 1/8 kilogram quantities between Stinson and Lynch in this same time period. Carl Munger was also federal charged as part of the Stinson investigation and cooperated in this investigation; Munger stated he and Lynch purchased cocaine together as partners in 2005 and 2006.

9. The defendant, KEVIN LYNCH gave information to Racine investigators directly implicating himself in an interview requested by LYNCH while he was incarcerated in the Racine County Jail in 2007. LYNCH stated he purchased approximately one kilogram of cocaine weekly from various sources of supply in Racine from 2005 until January 2007. LYNCH was attempting to cooperate with law enforcement in hopes of avoiding being federally indicted as part of the Munger and Stinson indictments.

10. On March 19, 2008, a cooperating witness, CW-2 debriefed with state and federal agents pursuant to the federal proffer agreement. Your affiant believes that CW-2 is reliable as much of his/her information has been verified by independent investigation, and most of CW-2's statements were against the penal interest of CW-2, adding to their reliability. During the March 19, 2008, debrief CW-2,

indicated that he/she was present in October 2007, when CW-2 observed KEVIN LYNCH purchase one kilogram of cocaine in Racine for a source and supply utilized by CW-2 at that time. CW-2 further indicated that LYNCH utilized two workers or couriers to sell and distribute his cocaine and crack cocaine. CW-2 indentified the two workers as Raymond Turner, aka "Peanut" and Carl Munger.

11. On April 15, 2008, Milwaukee Police Officers, arrested KEVIN LYNCH, Raymond Turner and Carl Munger for attempted delivery of a controlled substance. According to Milwaukee Police Detective Harold Young, he utilized a confidential informant (CI), who had previously participated in at least five prior controlled deliveries with law enforcement and who has been found to be reliable in the past. According to Detective Young, the CI contacted Turner via a phone call and ordered two ounces of crack cocaine from Turner as part of a controlled delivery. The CI established a meet location and just prior to the delivery, Milwaukee police officers attempted to arrest Turner and the occupants of his vehicle. According to Young, LYNCH was driving the vehicle with Turner and Munger as passengers. According to Young as Turner observed law enforcement approaching he exited the auto and threw down approximately 56 grams of crack cocaine. The substances was later tested and found to test positive for cocaine base According to the CI he had purchased large amounts of crack cocaine during the past several months from a Raymond Turner, aka "Peanut". According to the CI during each of the deliveries, Turner was accompanied by LYNCH. According to the CI, LYNCH was present when the crack cocaine was delivered and the transactions were discussed in the presence

of LYNCH and that LYNCH usually acted as the lookout during the deals. LYNCH was arrested with $1,270 in his front left pants pocket and $1,226 in his front right pants pocket. According to LYNCH he earned the money cutting hair but according to LYNCH's federal parole agent Kristi Baaken, LYNCH never claimed this income on his monthly supervision reports. LYNCH further denied knowledge of any drugs possess by Turner.

## CONCLUSION

Based on the foregoing, I believe there is probable cause to believe that Kevin Lynch has conspired to distribute cocaine in violation of Title 21 USC 841(a)(1) and 846.